UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ELLIOT & CALLAN, INC., a Minnesota corporation, | Case No. 07-CV-3391 (PJS/AJB) |
| Plaintiff, | |
| v. | ORDER DENYING EXEMPTION CLAIMS |
| LUTHER ALLAN CROFTON, | |
| Defendant. | |

Donald S. Arbour, ARBOUR LAW FIRM, for plaintiff.

Jack E. Pierce, PIERCE LAW FIRM, P.A., for defendant.

This matter is before the Court for a determination of the validity of defendant Luther Crofton's claims of exemption from garnishment. For the reasons stated below, the Court finds that Crofton's exemption claims are meritless.

## I. BACKGROUND

*A. This Action*

On March 30, 2009, the Court entered judgment against Crofton and in favor of plaintiff Elliot & Callan, Inc. ("E&C") in the amount of $47,427.60. Crofton did not appeal. In April 2009, E&C served garnishment summonses on Fidelity Investments ("Fidelity") and Ameriprise Brokerage ("Ameriprise"), where Crofton maintains certain accounts. *See* Pierce Decl. May 22, 2009 [hereinafter "First Pierce Decl."] Exs. B, C.[1] Fidelity responded that it is

---

[1] E&C also served Crofton with a notice of intent to levy on earnings. *See* First Pierce Decl. Ex. A. But E&C has not yet served a summons on Crofton's employer. For that reason, E&C argues, Crofton's motion is premature insofar as it relates to the notice of intent to levy. Crofton has not argued otherwise. Accordingly, the Court does not address whether Crofton's earnings are exempt from garnishment.

holding $32,787.74 in a Roth IRA (the "Roth IRA"). First Pierce Decl. Ex. D. Ameriprise responded that it is holding $139.26 in a brokerage account (the "Ameriprise account"). First Pierce Decl. Ex. E. As a result of related state-court litigation (discussed below), E&C is also aware that Fidelity is holding $662,159.64 on Crofton's behalf in an account entitled "NRG Affiliates Employee Savings Plan" (the "NRG account"), Arbour Decl. Ex. 5, although Fidelity did not disclose this amount in response to the garnishment summons.

Crofton claims that the Roth IRA and the Ameriprise account are both exempt from garnishment. Crofton argues that E&C cannot invoke Minnesota law to garnish his property, as he is not a resident of Minnesota. Instead, Crofton argues, New Jersey law should apply — and, according to Crofton, all of the money in his Roth IRA and Ameriprise account would be exempt from garnishment under New Jersey law. Alternatively, Crofton argues that, even if Minnesota law does apply, the amount of money in his two accounts does not exceed the $63,000 exemption provided by Minn. Stat. § 550.37, subd. 24(a).

## B. The State-Court Action

E&C and Crofton were also involved in related litigation in state court. In November 2008, after obtaining a state-court judgment of $30,194.00, E&C served garnishment summonses on Fidelity and Ameriprise.[2] Fidelity disclosed a total of $43,670.53 in two Roth IRAs and an individual account, and Ameriprise disclosed $30,194.00 — the exact amount of the judgment — in an IRA rollover account. Arbour Decl. Ex. 6 at 2. During the course of the state-

---

[2]At some points in the record, this entity is referred to as "Ameriprise Financial" rather than "Ameriprise Brokerage." See Arbour Decl. Ex. 4 at 1. It is unclear from the record whether these are two separate entities, but the parties have treated them as one in their briefing and argument. The Court will therefore do likewise.

court proceedings, E&C discovered that, shortly after receiving the November 2008 garnishment summonses, Crofton transferred nearly $662,159.64 from his Ameriprise IRA rollover account into his NRG account, apparently in the belief that the NRG account is entirely exempt from garnishment as an "ERISA-qualified" account. Arbour Decl. Ex. 6 at 2; 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."); *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 339 (Minn. 1995) ("plans governed by [ERISA] are exempt from garnishment or attachment without limitation").

In state court, Crofton made many of the arguments in favor of exemption that he raises again here; all of those arguments were rejected by the state court. Arbour Decl. Exs. 2, 6. Specifically, the state court held that Minnesota law applied and that, for purposes of determining whether the amount in Crofton's accounts exceeded the $63,000 exemption, the amounts in all of his accounts should be aggregated, including the amounts in any ERISA-qualified accounts. *See* Arbour Decl. Ex. 6 at 3. As a result, the state court held that Crofton's funds exceeded the $63,000 exemption amount and denied Crofton's exemption claims.

## II. ANALYSIS

### A. Res Judicata and Collateral Estoppel

E&C contends that all of Crofton's arguments in favor of his exemption claims are barred by the doctrines of res judicata and collateral estoppel. The Court applies Minnesota law to determine the preclusive effect of a Minnesota state-court judgment. *See* 28 U.S.C. § 1738; *Haring v. Prosise*, 462 U.S. 306, 313 (1983).

The doctrine of res judicata (sometimes referred to as "claim preclusion") bars relitigation of claims that were litigated, or that could have been litigated, in an earlier action. *State v.*

*Joseph*, 636 N.W.2d 322, 327 (Minn. 2001). In this federal action, Crofton is seeking to exempt his accounts from garnishment summonses served in April 2009. In the earlier state-court action, Crofton sought to exempt his accounts from garnishment summonses served in November 2008. Crofton's exemption claims in this proceeding are thus not the same as the exemption claims that he litigated in the state-court proceeding. So Crofton did not *actually* litigate his present claims in the state-court action.

In addition, Crofton *could* not have litigated his present claims in the state-court action. Again, Crofton's present claims arose in April 2009. The state-court action ended in March 2009. Crofton obviously could not have litigated in a state-court proceeding that ended in March 2009 whether he was exempt from garnishment summonses that were not served until April 2009. Crofton is therefore not barred by the doctrine of res judicata from seeking exemptions from the April 2009 garnishment summonses. *See St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821-22 (8th Cir. 2008) (explaining that res judicata did not apply, despite common factual circumstances underlying the claims, when the claims were based on two distinct breaches of duty that occurred at different times); *Hauschildt v. Beckingham*, 686 N.W.2d 829, 841 (Minn. 2004) ("claims cannot be considered the same cause of action if the right to assert the second claim did not arise at the same time as the right to assert the first claim" (citations and quotations omitted)).

That does not mean, however, that Crofton is free to relitigate specific factual or legal issues that were decided against him in the state-court proceeding. Crofton must first overcome the doctrine of collateral estoppel (sometimes referred to as "issue preclusion").

> Collateral estoppel precludes the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. The application of collateral estoppel is appropriate where:
>
>> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982) (citations omitted). There is no dispute that there was a final judgment on the merits in state court, that Crofton was a party to the state-court action, and that Crofton was given a full and fair opportunity to be heard in state court.[3] As to each of the issues Crofton raises in this case, then, the Court must determine whether the issue is identical to an issue actually litigated in state court, whether the state court decided the issue, and whether the state court's decision was essential to the resulting judgment.

### B. Location of the Funds

In the state-court action, Crofton argued that the state court lacked jurisdiction over funds held by Fidelity and Ameriprise because such funds are not located in Minnesota. *See* Arbour Decl. Ex. 2 at 2-3. The state court rejected this argument and found that it had jurisdiction over the funds under *Templeton v. Van Dyke*, 210 N.W. 874 (Minn. 1926). *See* Arbour Decl. Ex. 6 at 2. In *Templeton*, the Minnesota Supreme Court held that Minnesota courts have jurisdiction

---

[3]Crofton has appealed from the state-court judgment. The Court does not know whether his appeal encompasses the issues litigated in the supplemental garnishment proceedings, but it does not matter, as the pendency of an appeal from a state-court judgment does not destroy the finality of that judgment for purposes of collateral estoppel. *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 572 (Minn. Ct. App. 1984).

over a resident garnishee (such as Fidelity or Ameriprise) who owes a debt to a nonresident (such as Crofton) because a "debt has a situs wherever the debtor or his property can be found." *Templeton*, 210 N.W. at 876.

It is not clear whether Crofton is arguing in this action, as he did in the state-court action, that no court located in Minnesota can exercise authority over the Fidelity and Ameriprise accounts because the funds in those accounts are not located in Minnesota. What is clear is that Crofton is collaterally estopped from making the argument again here. By citing *Templeton*, the state court was obviously agreeing with E&C that the presence of Fidelity and Ameriprise in Minnesota means that the debts owed by Fidelity and Ameriprise to Crofton are also located in Minnesota. ("Debts" is simply a way of characterizing the funds that Fidelity and Ameriprise hold on Crofton's behalf; Fidelity and Ameriprise are indebted to Crofton in the amount of those funds.) The relevant facts are the same in this case, and thus the result must also be the same: The garnished funds, held by Fidelity and Ameriprise, are located in Minnesota.[4]

### C. *Privileges or Immunities*

Crofton's main argument is that, because he is a resident of New Jersey, the Privileges or Immunities Clause of the Fourteenth Amendment prohibits the use of Minnesota collections procedures to garnish his property. Crofton litigated this very issue in state court. *See* Pierce Decl. Aug. 11, 2009 [hereinafter "Second Pierce Decl."] Exs. 1-2 (transcript of state-court proceedings and Crofton's state-court reply memorandum). Crofton nevertheless argues that he is not estopped from raising it here because, in rejecting Crofton's exemption claims, the state-

---

[4]Even if Crofton were not collaterally estopped from arguing that the funds are not located in Minnesota, this Court would agree with the state court on the merits, and hold that, under *Templeton*, the funds are indeed located in Minnesota.

court judge did not expressly address the Privileges or Immunities Clause. Crofton relies on the principle that, where a judgment may have been based on one or more of several grounds, but does not expressly rely on any one of them, none of the grounds can have preclusive effect in future litigation because "it is impossible for another court to tell which issue or issues were adjudged by the rendering court." *Hauser v. Mealey*, 263 N.W.2d 803, 808 (Minn. 1978) (citation and quotations omitted).

Crofton's reliance on this principle is misplaced. There is no doubt that the state court applied Minnesota law, and there is no doubt that the state court would not have applied Minnesota law if it agreed with Crofton's Privileges or Immunities Clause argument. Without question, then, the state court rejected Crofton's argument, and its rejection was essential to its judgment. Under these circumstances, the state court's failure to address the argument explicitly is irrelevant. *See* 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4420 at 521 (2d ed. 2002) ("the simple fact of victory or defeat of a plaintiff or defendant establishes decision of all the issues that would have had to be resolved to support the result").

Even if Crofton were not estopped from arguing that the Privileges or Immunities Clause bars the application of Minnesota law, his argument plainly fails on the merits. Crofton contends that, by virtue of the Privileges or Immunities Clause, he is entitled to the privileges and immunities of New Jersey law on the basis of his status as a New Jersey citizen. *See* Docket No. 93 at 1 ("As a citizen of New Jersey, Crofton is entitled to the protections and immunities of New Jersey."); *id.* at 4 ("[A]s a resident of New Jersey Crofton is entitled to the protection of New Jersey's laws."). But it has been clear for over 130 years that the Fourteenth Amendment's Privileges or Immunities Clause "speaks only of privileges and immunities of citizens of the

United States, and does not speak of those of citizens of the several States." *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 74 (1872); *see also Snowden v. Hughes*, 321 U.S. 1, 6-7 (1944) (Privileges or Immunities Clause applies only to "those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law"). Crofton is explicitly seeking to avail himself of *state*-guaranteed privileges and immunities, which are plainly not protected by the Privileges or Immunities Clause.

Crofton also cites *Chicago, R.I. & P.R. Co. v. Sturm*, 174 U.S. 710 (1899) in support of his argument under the Privileges or Immunities Clause. According to Crofton, the following language from *Sturm* establishes that a creditor (such as E&C) who wants to collect a debt from a debtor (such as Crofton) must do so in the debtor's domicile:

> The essential service of foreign attachment laws is to reach and arrest the payment of what is due and might be paid to a nonresident to the defeat of his creditors. To do it, you must go to the domicile of his debtor, and can only do it under the laws and procedure in force there. This is a legal necessity, and considerations of situs are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor. He, and he only, has something in his hands. That something is the res, and gives character to the action, as one in the nature of a proceeding in rem.

*Id.* at 715-16.

There are two problems with Crofton's reliance on *Sturm*. The first problem is that *Sturm* has nothing to do with the Privileges or Immunities Clause; instead, it concerns a Kansas court's failure to give full faith and credit to an Iowa judgment. The second (and more important)

problem is that Crofton misunderstands the meaning of the language from *Sturm* on which he relies. As a full reading of *Sturm* makes clear, the "debtor" referred to in the passage quoted above is not the judgment debtor — that is, the person in Crofton's position. Rather, when *Sturm* refers to the "debtor," it is referring to the garnishee — that is, the person or entity in Fidelity's or Ameriprise's position. Because it is the garnishee (Fidelity or Ameriprise) who "has something in his hands" — something that belongs to the judgment debtor (Crofton) — one must, according to *Sturm*, go to the garnishee's domicile (Minnesota) in order to pursue garnishment proceedings. Far from supporting Crofton's argument, *Sturm* contradicts it.[5]

This is not to say that there are no constitutional limitations on the application of a particular state's law. To satisfy the requirements of the Full Faith and Credit Clause and the Fourteenth Amendment's Due Process Clause, the application of a state's laws must be premised on sufficient contacts with that state: "'[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant

---

[5]The Supreme Court has since held that a state may not exercise in rem jurisdiction unless the minimum-contacts standard of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) is met. *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). That is not an issue here, as there is no question that Crofton has sufficient contacts with Minnesota to permit the Court to exercise personal jurisdiction over him. Moreover, *Shaffer* also explained that, once a plaintiff has obtained a judgment against a defendant, the plaintiff can ordinarily collect on that judgment in any state in which the defendant has property, regardless of whether that state has personal jurisdiction over the defendant:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Id.* at 210 n.36.

aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) (plurality opinion) (alteration in *St. Jude Medical*)).[6]

Crofton makes a cursory argument that the application of Minnesota law is arbitrary and unfair, but his argument is frivolous. This case involves a Minnesota corporation suing an officer and majority shareholder of a second Minnesota corporation under Minnesota law for fraudulently transferring assets out of the second Minnesota corporation and thus depriving the first Minnesota corporation of recovery on a debt that arose in Minnesota. This Court, sitting in Minnesota, entered judgment in favor of the first Minnesota corporation and against the second Minnesota corporation. The first Minnesota corporation now seeks to satisfy that Minnesota judgment with assets located in Minnesota. There is obviously nothing arbitrary or unfair about applying Minnesota law in this garnishment proceeding.

---

[6]To be precise, one could say that the right against arbitrary application of state law secured by the Full Faith and Credit Clause and the Fourteenth Amendment's Due Process Clause is a right incident to national citizenship that is therefore also protected by the Privileges or Immunities Clause. *See The Slaughter-House Cases*, 83 U.S. at 80 ("To these [rights of United States citizenship] may be added the rights secured by the thirteenth and fifteenth articles of amendment, and by the other clause of the fourteenth . . . ."). But viewing these rights through the prism of the Privileges or Immunities Clause does not add anything to the analysis. *See* Richard L. Aynes, *Constricting the Law of Freedom: Justice Miller, the Fourteenth Amendment, and the Slaughter-House Cases*, 70 Chi.-Kent L. Rev. 627, 636 (1994) (*The Slaughter-House Cases* "suggested a limited number of rights to be protected by Section 1 of the Fourteenth Amendment, each of which was already protected by the federal government and enforced against the states by the Supremacy Clause.").

*D. Choice of Law*

Crofton next argues that, even if there is no constitutional impediment to the application of Minnesota law, Minnesota's choice-of-law principles dictate the application of New Jersey law. Crofton raised this same argument in the state-court proceedings and lost. *See* Arbour Decl. Ex. 2 at 4-5 (Crofton's state-court memorandum arguing that either New Jersey or North Carolina law should apply); Arbour Decl. Ex. 6 (state-court order applying Minnesota law). Crofton is therefore collaterally estopped from relitigating this issue.

Even if Crofton were not estopped, the Court would have no trouble concluding that Minnesota law should apply. As noted above, E&C is a Minnesota resident seeking to recover against property located in Minnesota on a Minnesota judgment rendered under Minnesota law against the officer and majority shareholder of another Minnesota corporation. Minnesota's contacts with this litigation are overwhelming, and Minnesota has a strong interest in the application of its law to this case. *Cf. Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn. 1994) (listing the five "choice-influencing" factors, including predictability of result, advancement of the forum's governmental interest, and application of the better rule of law).

*E. Exemption*

Having concluded that Minnesota law applies to this case, the Court addresses the only remaining issue: whether Crofton has a valid claim for exemption under Minnesota law.

Minnesota exempts a portion of the following property from garnishment:

> The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, Roth IRA, individual retirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age,

-11-

> or length of service, to the extent of the debtor's aggregate interest
> under all plans and contracts up to a present value of $30,000 and
> additional amounts under all the plans and contracts to the extent
> reasonably necessary for the support of the debtor and any spouse
> or dependent of the debtor.

Minn. Stat. § 550.37, subd. 24(a). The $30,000 exemption amount is periodically adjusted pursuant to Minn. Stat. § 550.37, subd. 4a. The parties agree that the currently applicable exemption amount is $63,000. First Pierce Decl. Ex. J. The parties further agree that Crofton's Roth IRA and Ameriprise account qualify for that exemption.

Crofton argues that the amount of money in his Roth IRA and Ameriprise account does not exceed the $63,000 exemption amount of § 550.37, subd. 24(a), and thus that all of that money is exempt from garnishment by E&C. But the state court held that, for purposes of determining whether the exemption limit was exceeded, the funds in *all* of Crofton's retirement accounts — including the $662,159.64 in his NRG account — should be aggregated. Arbour Decl. Ex. 6 at 3.

Admittedly, the state court also held that the amount in Crofton's Ameriprise account should be calculated as of the date of garnishment, which was before Crofton transferred the $662,159.64 out of his Ameriprise account and into the NRG account. Thus, the court's holding regarding aggregation was in the alternative. But the Minnesota Supreme Court has instructed that when a court explicitly rests its decision on two separate, independent grounds, the parties are collaterally estopped from relitigating *either* of those grounds in subsequent actions. *Goblirsch v. W. Land Roller Co.*, 246 N.W.2d 687, 691 (Minn. 1976) (jury's "independent and alternative" finding of assumption of risk was preclusive because "'[w]here the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both

grounds, although either alone would have been sufficient to support the judgment'" (quoting Restatement (First) of Judgments § 68 cmt. n (1942)); *see also In re Trusts Created by Hormel*, 504 N.W.2d 505, 510 (Minn. Ct. App. 1993) ("The fact that the court listed two grounds to support its decision does not demonstrate that the issue of the settlors' intent was not necessary to the judgment for collateral estoppel purposes."); Jo Desha Lucas, *The Direct and Collateral Estoppel Effects of Alternative Holdings*, 50 U. Chi. L. Rev. 701, 703 & n.15 (1983) (citing cases for the proposition that "under traditional principles, a judgment resting on two or more independently sufficient grounds precludes relitigation of any of them").

Here, as in *Goblirsch* and *Hormel*, the state court explicitly based its decision on two grounds: first, that the amount in Crofton's Ameriprise account should be calculated as of the date of garnishment (that is, before the transfer), and second, that the amounts in *all* of Crofton's retirement accounts (including his NRG account) should be aggregated for the purpose of determining whether the exemption limit was exceeded. And here, as in *Goblirsch* and *Hormel*, each of the two grounds must be given preclusive effect. Crofton is therefore estopped from contending that the $662,159.64 in his NRG account should not be counted for the purpose of determining whether the $63,000 exemption limit has been exceeded. Because the $662,159.64 in Crofton's NRG account vastly exceeds the $63,000 exemption limitation, all of the funds in Crofton's Roth IRA and in his Ameriprise account were properly garnished.[7]

---

[7]The Court notes that the state court assumed, without deciding, that Crofton's Roth IRA is entirely exempt from garnishment as an ERISA-qualified account. Arbour Decl. Ex. 6 at 2 n.1. In this case, however, Crofton has not argued that the Roth IRA is an ERISA-qualified account.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's exemption claims are DENIED insofar as they relate to the garnishment summonses served on Fidelity Investments and Ameriprise Brokerage.

2. Plaintiff may levy on all garnished funds.

3. No later than October 20, 2009, defendant must provide proof to plaintiff that the NRG Affiliates Employees Savings Plan is an ERISA-qualified plan. If defendant fails to provide such proof, plaintiff may garnish funds in such plan and may seek any court orders necessary to effectuate the garnishment.

4. If plaintiff needs further discovery, plaintiff is directed to contact the chambers of Magistrate Judge Boylan.

Dated: October 13, 2009

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge